Mary H. Latta v. Commissioner.
Mary H. Latta v. Commissioner
Docket No. 34043.
United States Tax Court
1953 Tax Ct. Memo LEXIS 241; 12 T.C.M. (CCH) 577; T.C.M. (RIA) 53180; May 25, 1953
Donald M. McDonald, Esq., and Stephen T. Dean, Esq., 1421 Chestnut Street, Philadelphia, Pa., for the petitioner. Edward Pesin, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves gift tax liability of petitioner for the year 1947 in the amount of $23,239.55. The question presented is whether petitioner's relinquishment on December 14, 1947, of her power to modify or revoke, with a consent of all the trustees, the trust created by her on March 11, 1930, subjected her to gift tax liability. Findings of Fact Petitioner is an individual residing at Tunbridge Road, Haverford, Pennsylvania. A gift tax return for the taxable year involved was filed with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. *242 On October 15, 1929, petitioner separated from her husband, Leonard R. Bissell, leaving with him their two adopted children, Cynthia and Rufus, aged five and four years old, respectively. On March 11, 1930, petitioner executed a trust, transferring to Maxwell S. Wheeler, Welles V. Moot and Leonard R. Bissell, as trustees, 405.031 shares of stock in Hubbell Realty Corporation, 2,314.668 shares of stock in the General Drop Forge Company, Inc., and 308.045 shares of stock in Federal Telephone and Telegraph Company. The trust instrument provided that the income should be payable to the petitioner during her life, and, upon her death, to divide the trust into two equal trust funds and to pay income to her children, Cynthia and Rufus. One-half of the principal of the trust fund for Rufus was to be paid to him on reaching the age of 25 years and the balance when he reached the age of 30 years. One-half of the principal of the trust fund for Cynthia was to be paid to her on reaching the age of 30 and the balance when she reached the age of 40. In the event either child died leaving issue the issue would take the parent's share, and in default of issue the survivor would take the share *243 of the deceased child. In the event of the death, resignation or disqualification of any trustee, petitioner had the right to appoint a successor. By subparagraph one of paragraph sixteenth the trustees, during the life of petitioner, could not lease, sell, transfer, invest, reinvest, mortgage, or encumber the trust funds without the written consent of the petitioner. Subparagraph five of paragraph sixteenth provided: "This entire trust agreement may be rescinded or may be modified in any way at any time by the unanimous consent of all the Trustees and the Donor." On July 28, 1944, and on November 15, 1947, petitioner, with the consent of all of the trustees, executed written modifications of the original trust instrument changing the interests of the beneficiary remaindermen. On December 14, 1947, petitioner, with the consent of all the trustees, further modified the original trust instrument by eliminating the provision requiring the consent of the petitioner to the lease, sale, transfer, investment, reinvestment, mortgage, or encumbrance of the trust property, and the provision permitting the recision or modification of the deed of trust by the unanimous consent of all the *244 trustees and the donor. The agreement further provided that the trust deed "is irrevocable and cannot be rescinded or modified in any manner at any time by any person or persons." After the separation of petitioner and her husband, Leonard R. Bissell, in 1929, the two adopted children continued to live with their foster father for about a year and a half but visited the petitioner from time to time. Petitioner wanted Rufus to live with her, but Bissell would not consent. Petitioner then spoke of creating a trust for the children, and it was agreed that if such a trust was created she could have one of the children. The trust in question was created and Rufus went to live with the petitioner in Philadelphia. In May 1932 petitioner was divorced from Bissell and in June 1932 married Thomas H. Latta. At the time of the separation of petitioner from Bissell, Bissell was president of the Ge eral Drop Forge Company from which he received an annual salary of $5,000. He was also engaged in the general insurance business, receiving between $10,000 and $15,000 a year from that business. The shares of stock of the General Drop Forge Company were sold by the trustees prior to May 11, 1941. Commencing *245 shortly after her marriage to Thomas H. Latta, and continuing down to the time of the execution of the agreement of modification on December 14, 1947, the petitioner repeatedly endeavored to obtain the consent of the trustees to a revocation of the original trust instrument, without success. Opinion LEMIRE, Judge: The question presented is whether petitioner's relinquishment on December 14, 1947, of her power to modify or revoke, with a consent of all the trustees, the trust created by her on March 11, 1930, subjected her to a gift tax liability. In the event the answer is in the affirmative the petitioner claims an unused specific exemption in the amount of $15,794.72. The petitioner's principal argument is that the gift here was complete when the trust was created since the reserved power required the unanimous consent of all the trustees, some of whom had a substantial adverse interest in the disposition of the trust property. Respondent contends that the trustees as such had no substantial adverse interest, and the agreement of December 14, 1947, wherein the petitioner and the trustees relinquished their power to modify or revoke the trust, for the first time placed the *246 property transferred in trust beyond the recall of the petitioner and caused a gift tax to apply. ; Regulations 108, sec. 86.3. [1]
The trust instrument provided that the income of the trust was to be paid to the petitioner during her life. Upon her death the corpus of the trust was *247 to be divided into two trusts for the benefit of the two adopted children of petitioner and her former husband, Leonard R. Bissell, who was one of the three named trustees. At the time the trust was created it was understood between petitioner and her then husband that the son Rufus would go to live with the petitioner and the daughter Cynthia would remain with the father. In 1932 the petitioner was divorced from Bissell and both of them remarried. The petitioner contends that Bissell had a substantial adverse interest in the disposition of the trust property or the income therefrom. It is argued that Bissell had an economic interest because he had been divorced from petitioner. It is also argued that the other trustees had a substantial adverse interest as evidenced by their repeated refusals to accede to the petitioner's request to consent to a termination of the trust. In our opinion the record does not establish the existence of a substantial adverse interest in any of the three named trustees. The general rule has been adopted that to constitute a substantial adverse interest the holder of the power must have a direct legal or equitable interest and not merely a parental *248 or sentimental interest in seeing the trust fulfilled. . Cf. . Bissell no doubt might in fact have had a strong personal motive or felt he had a moral obligation to resist revocation which would put out his adopted children. We think, however, it is clear that he did not have a substantial adverse interest within the meaning of the regulations. The question whether a transfer is taxable as a gift does not depend upon the state of mind of the holders of the power. Significant here is the fact that on July 28, 1944, and again on November 15, 1947, all of the trustees did give their consent to a modification of the original trust instrument changing the interests of the remainder beneficiaries, thus indicating they were amenable to the wishes of the petitioner. The mere power to modify, reserved by donor either alone or in conjunction with others not having a substantial adverse interest, is sufficient to render a transfer incomplete as a taxable gift. A further contention of the petitioner is that Bissell had a substantial adverse interest *249 since a revocation of the trust would enable the petitioner to oust him from the presidency of the General Drop Forge Company from which he was receiving an annual salary of $5,000. This record does not contain evidence that the 35 per cent of the capital stock of that corporation which the trust held, if restored to petitioner, would give to her the control required to effect the ouster. Assuming, however, such result could be accomplished, the economic interest of Bissell is too indirect and remote to admit of valuation. To constitute a substantial adverse interest the economic interest must be one that is capable of monetary valuation. We hold that the relinquishment on December 14, 1947, of the power to modify or revoke the trust placed the property transferred beyond the recall of the petitioner and caused a gift tax to apply. On this issue we sustain the respondent. In determining the gift tax deficiency of $23,239.55 the respondent gave no consideration to any amount as a specific exclusion. In her petition and on brief petitioner claims a specific exclusion in the amount of $15,794.72. The gift tax return filed by the petitioner *250 discloses that a specific exclusion of the amount of $14,205.28 had been claimed with respect to prior gifts. On the return the petitioner asserted no gift was made in 1947 and claimed no additional amount as a specific exclusion. At the hearing of this proceeding the petitioner offered in evidence, without objection, the thirty-day letter of the respondent in which it is stated: "In view of the fact that you have claimed only $14,205.28 of the specific exemption available you may, if you so desire, claim specific exemption in the amount of $15,794.72 in which event the net taxable gifts for this calendar year will be $118,492.15 and the deficiency of $19,685.73. * * *" In view of the respondent's determination and the claim of the petitioner to the unused specific exemption of $15,794.72, such amount should be taken into consideration in computing the petitioner's tax liability for the taxable year 1947. Decision will be entered under Rule 50. Footnotes
1. Regulations 108, section 86.3, here material, provides as follows: A gift is incomplete in every instance where a donor reserves the power to revest the beneficial title to the property in himself. * * *
A donor shall be considered as himself having the power where it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income. The relinquishment or termination of a power to change the disposition of the transferred property, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors, is regarded as the event which completes the gift and causes the tax to apply. * * *↩